[Cite as *State v. Cassell*, 2017-Ohio-769.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA15 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| RODGER CASSELL, | : | |
| Defendant-Appellant. | : | **RELEASED: 2/22/2017** |

<u>APPEARANCES</u>:

Rodger Cassell, Orient, Ohio, pro se appellant.

Anneka Collins, Highland County Prosecuting Attorney, and James Roeder, Highland County Assistant Prosecuting Attorney, Hillsboro, Ohio, for appellee.

Harsha, J.

{¶1}    Rodger Cassell pleaded guilty to drug possession and engaging in a pattern of corrupt activity with forfeiture specifications under Ohio's Racketeer Influenced and Corrupt Organizations (RICO) statute. After accepting the plea the court convicted him, imposed consecutive sentences, and ordered certain of Cassell's personal property forfeited.

{¶2}    Approximately five years later Cassell filed a motion to withdraw his guilty plea to the RICO count. He argued that after he pleaded guilty, the Supreme Court of Ohio, in a case involving two of his co-defendants, held that the RICO statute was ambiguous concerning the monetary threshold necessary to obtain a conviction, and that the minimum threshold must be applied to each individual within the enterprise, rather than to the enterprise as a whole. Cassell argues that he did not have a complete understanding of the RICO charge at the time he pleaded guilty because the Supreme

Court of Ohio had not yet clarified that the $500 threshold applied to each individual, rather than collectively to the enterprise. He argued that this created a manifest injustice justifying the withdraw of his guilty plea. The trial court denied the motion.

{¶3} On appeal Cassell claims that the trial court violated the supremacy, due process and equal protection clauses of the United States Constitution when it refused to give the Ohio Supreme Court's decision in *State v. Stevens,* 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252 retroactive application.  However, the trial court was not required to apply the decision retroactively. *Stevens* is a plurality opinion and therefore not binding on anyone beyond the parties in that case. Moreover, the trial court in effect applied *Stevens* retroactively when it indicated Cassell was charged with personally receiving more than $36,000 from his activity within the enterprise. We reject this assignment of error.

{¶4} Cassell also claims that the trial court abused its discretion when it overruled his motion without a hearing because he established that a manifest injustice occurred due to an incorrect application of the RICO statute's monetary threshold at his plea hearing. We reject this contention for two reasons. First, Cassell's guilty plea was an admission that he personally received more than $500 from his activity in the enterprise. Second, our review of the plea colloquy discloses that the trial court explained the nature of the Ohio RICO count. Cassell did not profess any confusion, ask any questions, or give any indication that he did not understand the nature of the charges. And, any possible confusion that may have existed about the monetary threshold was immediately dispelled when the trial court informed Cassell that the monetary amount the state alleged against him individually exceeded the minimum

threshold of $500, i.e. more than $36,000. Because the trial court did not abuse its discretion in denying his motion to withdraw without a hearing, we reject this assignment of error.

{¶5}   Cassell also contends that his guilty plea was void, as being involuntary, because he could not be expected to understand a statute that the Supreme Court subsequently determined was ambiguous.  Thus, Cassell argues that his guilty plea was not knowingly entered, making it void. Based upon our rejection of his first and second assignment of errors, the premise for his claim that he could not have knowingly entered a guilty plea is false. Moreover, to the extent that he argues the trial court failed to comply with Civ. R. 11, the record clearly refutes that contention.

{¶6}   Last Cassell contends that the trial court erred in denying his motion because the court improperly relied upon his guilty plea to other drug charges in reaching its decision.  Cassell misconstrues the trial court's decision. The trial court did not deny his motion to withdraw his RICO plea because he had also pleaded guilty to drug possession. Instead the trial court noted that in the absence of manifest injustice justifying the withdrawal of Cassell's RICO plea, the entire plea agreement should remain enforceable.  We overrule Cassell's fourth assignment of error.

{¶7}   Therefore, we affirm the trial court's judgment denying his postsentence motion to withdraw his guilty plea.

## I. FACTS

{¶8}   A Highland County grand jury charged Cassell with engaging in a pattern of corrupt activity (the Ohio RICO count), tampering with evidence, drug possession, drug trafficking, drug trafficking in a school zone, and a forfeiture specification

associated with the Ohio RICO count. The indictment included a total of 62 counts and 9 defendants. Cassell was charged in 57 of the 62 counts. The state alleged that Cassell was the leader of an illegal drug enterprise and, as leader, he obtained heroin and cocaine for distribution, and directed the drug trafficking activities of his co-defendants. The forfeiture specification alleged that Cassell used, derived, or realized property in his RICO activities, including $36,569.00 in U.S. currency seized from him, four vehicles, two televisions and a GPS.

**{¶9}** Cassell pleaded guilty to one Ohio RICO count, the forfeiture count, and one count of drug possession. He agreed to forfeit all interest in the monies and property identified in the indictment. The state dismissed the remaining charges and recommended a total sentence of 9 years. The trial court conducted a colloquy to determine whether Cassell was fully informed of his rights and understood the consequences of his guilty plea. Upon being satisfied that Cassell knowingly, intelligently, and voluntarily entered his plea and waived his constitutional rights, the court accepted his plea, convicted him, sentenced him to nine years in prison and ordered the forfeiture of the listed property and money.

**{¶10}** Co-defendants Jeffrey Stevens and Zachary Bondurant went to trial and ultimately had their RICO convictions reversed by the Supreme Court in *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252. Five years later Cassell filed a motion to withdraw his guilty plea, the trial court denied it, and Cassell appealed.

## II. ASSIGNMENTS OF ERROR

**{¶11}** Cassell assigns the following errors for our review:

I.    THE TRIAL COURT ERRED AND ABUSED JUDICIAL DISCRETION
      WHEN OVERRULING THE POST-SENTENCE MOTION TO

WITHDRAW GUILTY PLEA WITHOUT A HEARING BECAUSE THE MOTION SET FORTH A MANIFEST INJUSTICE IN NEED OF CORRECTION AS DEFINED BY OHIO CRIM. R. 32.1. (DOC. NO. 100, 04/28/16).

II.     THE TRIAL COURT ERRED, ABUSED JUDICIAL DISCRETION, AND VIOLATED THE SUPREMACY, DUE PROCESS AND EQUAL PROTECTIONS [SIC] CLAUSES OF THE UNITED STATES CONSTITUTION BY OVERRULING THE POST-SENTENCE MOTION TO WITHDRAW GUILTY PLEA WITHOUT A HEARING WHEN REFUSING TO RETROSPECTIVEY [SIC] APPLY *STATE V. STEVENS & BONDURANT* (2014), 139 Ohio St.3d 247, 11 N.E.3d 252, IN ACCORDANCE WITH THE PRINCIPLES SET FORTH IN *FIORE, BUNKLEY, MONTGOMERY, AND AGEE.* (DOC. NO. 100, 04/28/16).

III.    THE TRIAL COURT ERRED AND ABUSED JUDICIAL DISCRETION WHEN OVERRULING THE POST-SENTENCE MOTION TO WITHDRAW GUILTY PLEA WITHOUT A HEARING WHEN PROVEN THAT THE GUILTY PLEA WAS "VOID" BECAUSE IT WAS PREDICATED ON AN AMBIGUOUS INTERPRETATION OF OHIO'S "RICO ACT" THAT WAS SUBJECTED TO A LATTER CLARIFICATION AND DEFINITIONAL CORRECTION BY THE SUPREME COURT OF OHIO IN APPELLANT'S CO-DEFENDANTS' CASE, IN ACCORDANCE WITH THE PRINCIPLES SET FORTH IN *FIORE, BUNKLEY, MONTGOMERY, AND AGEE.* (DOC. NO. 100, 04/28/16).

IV.    THE TRIAL COURT ERRED, ABUSED JUDICIAL DISCRETION, AND VIOLATED THE DUE PROCESS AND EQUAL PROTECTIONS [SIC] CLAUSES OF THE UNITED STATES CONSTITUTION WHEN OVERRULING THE POST-SENTENCE MOTION TO WITHDRAW GUILTY PLEA WITHOUT A HEARING BY RULING THAT APPELLANT WAS NOT ALLOWED TO WITHDRAW HIS GUILTY PLEA TO THE UNCONSTITUTIONALLY INTERPRETED OHIO RICO CHARGE, STANDING ALONE, BECAUSE HE ALSO PLEAD [SIC] GUILTY TO ANOTHER DRUG CHARGE. (DOC. NO. 100, 04/28/16).

III. LAW AND ANALYSIS

A.  Constitutional Claims

1.      Background

**{¶12}** Initially we address Cassell's second assignment of error to facilitate a more logical discussion of all the issues. Cassell contends that the trial court violated his supremacy, due process and equal protection constitutional rights by refusing to apply the holding in *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252 retroactively to his motion.

**{¶13}** In *Stevens, supra* (a consolidated appeal) the Supreme Court of Ohio found that the RICO convictions of two of Cassells co-defendants, Stevens and Bondurant were erroneous.  In doing so in a plurality opinion they ruled that the state failed to prove Stevens and Bondurant profited individually by more than $500 as a result of their personal involvement with the illegal drug enterprise.  On their appeal to our court we held that the state only needed to establish the enterprise as a whole received more than $500 from the activity for any of the individual participants to be guilty of violating the RICO statute. *See State v. Bondurant and Stevens*, Highland No. 11CA25 and 11CA27, 2012-Ohio-4912, 982 N.E.2d 1261 (4th Dist.)

**{¶14}** In *Stevens*, the Supreme Court rejected our analysis, but its opinion did not have a majority of four justices who agreed upon a clear statement of the analysis and requirements relating to the monetary threshold element of the crime. See the discussion below that follows.

2.  Retroactivity

**{¶15}** Generally, new judicial rulings are not "applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all * * * appellate remedies." *Ali v. State*, 104 Ohio St.3d 328, 2004-Ohio-6592, 819 N.E.2d 687, ¶ 6. However, there is an exception to the rule against retroactivity in cases in where the

court addresses the meaning of a statute for the first time. In that situation the rule against retroactive application does not apply because the court is not announcing a new rule of law, i.e. changing the existing law.  Rather the court is determining what the relevant statutes have meant since their enactment. *State v. Ketterer,* 140 Ohio St.3d 400, 2014-Ohio-3973,18 N.E.3d 1199, ¶ 14 citing *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 23–25, and *Agee v. Russell*, 92 Ohio St.3d 540, 543–544, 751 N.E.2d 1043 (2001).  Cassell argues that *Stevens, supra,* should be applied retroactively because it did not announce a new rule of law; it removed an ambiguity and stated what existing law was at the time when he was convicted.

**{¶16}**  However, *Stevens* is a plurality opinion, written by Justice O'Neill, with Justices Pfeifer and Lanzinger concurring that the RICO statute was ambiguous. As a result, the O'Neill opinion stated the threshold monetary limit applied to each individual, not collectively to the enterprise as a whole.  But Justice French concurred in judgment only and concluded that the statute is not ambiguous and does not require proof that the defendant personally profited in excess of the threshold – a defendant could be convicted even if the defendant received no profit as long as the total proceeds shared by everyone participating in a violation, or combination of violations, exceeded the $500 threshold. Justices Kennedy and O'Donnell concurred in part, dissented in part, and concluded that the statute is not ambiguous and does not require that each individual defendant must participate in activities involving proceeds of more than $500. They adopted the collective enterprise approach used in our opinion and concluded Stevens and Bondurant were properly convicted of the RICO count. But they determined Steven was only guilty of a felony of the second degree, rather than a first degree felony as

determined below. They would have reversed only on that ground.  Chief Justice

O'Connor dissented and concluded that the statute was not ambiguous and the

threshold applies to the combination of violations committed by all those involved in the

enterprise, i.e. the collective enterprise approach.  Chief Justice O'Connor would have

affirmed our decision. Thus four Justices declared the statute was not ambiguous.  Only

three found otherwise. Three justices voted to reverse the judgment based upon the

O'Neill opinion. But, Justice French joined Justices O'Neill, Pfeifer, and Lanzinger only

in the result, i.e. reversal, but not the rationale or law espoused by Justice O'Neill's

opinion.

{¶17}  Though it may be persuasive, a plurality opinion is not controlling because

it fails to receive the support of the majority of the court. *State v. Reed*, 10th Dist.

Franklin No. 08AP-20, 2008-Ohio-6082, ¶ 57 citing *Hedrick v. Motorists Mut. Ins. Co.*,

22 Ohio St.3d 42, 44, 488 N.E.2d 840 (1986) overruled on other grounds; *see generally*

*Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994) (decision had

"questionable precedential value inasmuch as it was a plurality opinion which failed to

receive the requisite support of four justices of this court in order to constitute controlling

law"). Thus, the trial court did not err when it refused to acknowledge *Stevens* as

controlling authority, and concluded, "the ruling of the Ohio Supreme Court has not

really clarified anything." Decision, p. 4.  In other words, only the result of the Supreme

Court's decision is clear and binding, i.e. the reversal of the RICO convictions of

Stevens and Bondurant.

{¶18}  More importantly, here the trial court in effect applied the law as the

O'Neill opinion and Cassell himself propose.  The charges in the indictment and the

colloquy at the plea hearing show that the state alleged that the monetary amount involved in the Ohio RICO count against Casell exceeded the $500 amount *as applied to him individually*. In fact, it exceeded $36,000. Cassell is not the "petty criminal" or pot-dealing "high school senior" the *Stevens* decision is crafted to protect. *Stevens* at ¶ 15.

{¶19}  The trial court sufficiently explained the nature of the Ohio RICO charge under R.C. 2923.32(A)(1). Cassell did not profess that he was confused, ask any questions, or give any indication that he did not understand the nature of the charges. Cassell raised no question about the $500 monetary threshold set forth in former R.C. 2923.31(I)(2(c) (which is now $1,000).

{¶20}  Even if Cassell had harbored some unexpressed confusion about whether the state was required to prove the $500 threshold against him individually, as opposed to the enterprise as a whole, any confusion was dispelled a few moments later.  The trial court explained that the value of the property and the proceeds obtained in violation of the Ohio RICO statute used by Cassell individually exceeded the $500 threshold. The value of the property attributed solely to Cassell included four vehicles and $36,569.00 in U.S. currency:

> THE COURT: All right[.] And then Count 62 is a forfeiture specification. And it alleges that the following property that is indicated in Count 62, uh, was used in the course, or was intended to be used in the course of a violation of ORC 2923.32(A)(1), and that's Count One (1); or it was used in, intended for, or for use in, or derived from directly or indirectly, or realized through conduct in violation of the same section, Count One (1) and that any interest that you have is subject to forfeiture under 2923.32, which is the corrupt activity statute. And the property is identified as, No. 1, a 2005 Dodge Magnum, * * *, a 2004 Dodge Truck, * * *, a 2002 Jaguar, * * *, $36,569.00 in U.S. currency seized from you; a Magellan GPS seized from you; a Sony television seized from you; a Sonia, or Sonya, * * * television also sized from you[.] And that is property that the State alleges either was used in the commission of these offenses, or was proceeds from profits, or proceeds from the conduct of those activities. You understand that?

DEFENDANT CASSELL: Yes, sir.

THE COURT: Do you understand what it is the State is saying, uh, was done, and how, when, and where it was done?

DEFENDANT CASSELL: Yes, sir.

**{¶21}**  Cassell's constitutional claims are based on an erroneous premise that *Stevens* established binding precedent. It did not. Moreover, because the trial court was not required to apply *Stevens* as pronounced by the O'Neill opinion, but did in fact do so, Cassell's constitutional arguments are meritless. Thus, we overrule his second assignment of error.

### B.  Motion to Withdraw & Voluntariness of Plea

**{¶22}**  Cassell's first and third assignment of error are closely interrelated to each other and his second assignment of error. First, he argues the trial court erred by rejecting his motion without conducting a hearing. He contends his motion established he suffered a manifest injustice because he entered his guilty plea without an accurate understanding of the RICO statute. He claims this uninformed plea resulted from the fact that the Supreme Court of Ohio did not decide the appeal of his co-defendants, Stevens and Bondurant, until after Cassell entered his guilty plea. Thus he argues he had no way of knowing whether the $500 minimum statutory threshold applied to the enterprise collectively, or to him individually. This assignment of error contends he was entitled to a hearing based upon the facts alleged in his motion.

**{¶23}**  The purported involuntariness of his plea also forms the basis of the argument in his third assignment of error that the plea was somehow rendered void by

the Supreme Court's subsequent "clarification" that the focus of monetary threshold is upon the individual actors, not upon the enterprise as a whole.

### 1.   Motion to Withdraw Guilty Plea

{¶24}  In his first assignment of error Cassell asserts that the trial court erred when it overruled the motion without a hearing because he established a need to correct a manifest injustice.  Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶25}  "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice."  *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus; *State v. Ogle*, 4th Dist. Hocking No. 13CA18, 2014-Ohio-2251, ¶ 8.  A manifest injustice is a clear and openly unjust act; it relates to a fundamental flaw in the proceedings resulting in a miscarriage of justice or a deprivation of due process.  *See State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998); *Ogle* at 8; *Hall*, 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939, at ¶ 12.  "This is an 'extremely high standard' that permits a defendant to withdraw his plea 'only in extraordinary cases.' " *State v. Walton*, 4th Dist. Wash. No. 13CA9, 2014-Ohio-618, ¶ 10, quoting *State v. Darget*, 4th Dist. Scioto No. 12CA3487, 2013-Ohio-603, ¶ 21.

{¶26}  The decision to grant or deny a Crim.R. 32.1 postsentence motion to withdraw a guilty plea is committed to the sound discretion of the trial court; appellate review of the denial of the motion is thus limited to a determination of whether the trial

court abused its discretion. *Walton* at ¶ 11; *see also Smith* at paragraph two of the syllabus ("A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court"). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶27} An evidentiary hearing is not required for deciding postsentence motions to withdraw a guilty plea where the record conclusively and irrefutably contradicts the allegations in the motion. *See State v. Pasturzak*, 4th Dist. Scioto No. 08CA3252, 2009-Ohio-4222, ¶ 18; *State v. Iafornaro*, 9th Dist. Lorain No. 01CA007967, 2002-Ohio-5550, ¶ 12. Cassell's contentions were conclusively and irrefutably contradicted by the record of the proceedings before the court. Therefore, the trial court properly exercised its broad discretion in determining that Cassell did not satisfy his burden of establishing the extremely high standard of manifest injustice that would have warranted a withdrawal of his guilty plea. There was no clear and openly unjust act or a fundamental flaw in the proceedings resulting in a miscarriage of justice or a deprivation of due process.

{¶28} In our discussion of Cassell's second assignment of error we already determined that *Stevens* is a plurality opinion that has only persuasive value. It did not conclusively establish the law controlling the monetary threshold under Ohio RICO's statute, or that the statute was ambiguous. What it did establish is that four of the seven Justices found the statute was unambiguous. It also established that Stevens and Bondurant were entitled to have their RICO convictions reversed. However, the error

complained of in *Stevens* was not present in Cassell's case. Here the indictment and the trial court's explanation of the charges clearly advised Cassell that his individual involvement and profit from engaging in the enterprise exceeded the $500 minimum threshold. *See* ¶ 20 above; and ¶ 34, below.

**{¶29}** Cassell's contentions that *Stevens* changed the game are unfounded. The trial court did not need to conduct an evidentiary hearing to make that decision. Accordingly, it did not abuse its discretion in deciding Cassell's delayed motion to withdraw his guilty plea without holding an evidentiary hearing. We overrule Cassell's first assignment of error.

### 2. Crim. R. 11. Voluntariness

**{¶30}** " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.  Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).  "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards."  *State v. Moore*, 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, ¶ 13.

**{¶31}** "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest."  *Veney* at ¶ 8.  Before accepting a guilty plea in a felony case a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of

the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."  Crim.R. 11(C)(2)(a).  The court must also inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence."  Crim.R. 11(C)(2)(b).  Finally, the court must determine that the defendant understands that he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."  Crim.R. 11(C)(2)(c).

{¶32}  Substantial compliance with Crim.R. 11(C)(2)(a) and (b) is sufficient for a valid plea because they do not involve constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621, ¶ 14. " 'Substantial compliance means that, under the totality of the circumstances, appellant subjectively understood the implications of his plea and the rights he waived.' " *State v. McDaniel*, 4th Dist. Vinton No. 09CA677, 2010–Ohio–5215, ¶ 13, quoting *State v. Vinson*, 10th Dist. Franklin No. 08AP–903, 2009–Ohio–3240, ¶ 6.  However strict compliance with Crim.R. 11(C)(2)(c) is required because constitutional rights are involved. "However, failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead

guilty." *Veney* at ¶ 18 quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

**{¶33}** Substantial compliance with Crim.R. 11(C)(2)(a) does not necessarily require a detailed recitation of the elements of a charge by the court. *State v. Wright*, 4th Dist. Highland No. 94CA853, 1995 WL 368319, *4 (Jun. 19, 1995). "In order for a trial court to determine that a defendant is making a plea with an understanding of the nature of the charge to which he is entering a plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge." *State v. Rainey*, 3 Ohio App.3d 441, 442, 446 N.E.2d 188 (10th Dist. 1982).

**{¶34}** The trial court was not required to recite or explain each definition and subpart in R.C. 2923.31 when it determined if Cassell understood the nature of an Ohio RICO charge, "as long as the totality of the circumstances are such that the trial court was warranted in making the determination." *Rainey, supra*. A review of the plea hearing shows that the trial court explained the nature of the Ohio RICO charges:

> THE COURT: Okay. Now, Count One (1) indicates, or states in the indictment, that on or about the period of September 1, 2010, continuing through March 30, 2011, in Clinton County, Ohio, and as a continuing course of criminal conduct in Highland County, Ohio, that you, along with several other folks – I believe eight others – did recklessly while being employed by or associated with, directly or indirectly, conduct or participate in the affairs of an enterprise through a pattern of corrupt activity, in violation of Section 2923.32(A)(1) of the Revised Code. And that is the charge of Engaging in a pattern of corrupt activity, a first degree felony, carrying a sentence of three (3) years to ten (10) years actual incarceration; and a fine of up to twenty thousand dollars, and a license suspension of six (6) months to five (5) years, do you understand that charge?

DEFENDANT CASSELL: Yes, sir.

THE COURT: Do you understand what the State has said you've done, and when, where and how you've done it?

DEFENDANT CASSELL: Yes, sir.

**{¶35}** *See also*, ¶ 20 above.

**{¶36}** Under these circumstances Cassell could not establish any violation of Crim.R. 11. Our rejection of Cassell's first and second assignments of error renders the premise of Cassell's third assignment of error false. Moreover, a review of the plea hearing reveals the trial court complied with all the requirements of Crim.R. 11, rendering Cassell's plea voluntary. A defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have otherwise occurred. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). We find no evidence of any prejudice to Cassell, particularly where the state had alleged a monetary threshold against him personally in an amount well in excess of $500. We overrule Cassell's third assignment of error.

### C. Drug Possession/Forfeiture Pleas

**{¶37}** In his fourth assignment of error Cassell argues that the trial court's refusal to allow him to withdraw his guilty plea to the Ohio RICO count was erroneously based upon the fact that he also pled guilty to another drug charge. He argues that the rule of law that a defendant cannot collaterally attack a plea's validity because he later decides it was a "bad deal" should also apply to the prosecution. Cassell's "bad deal" analogy is nonsensical; the prosecution is not attacking the plea agreement as a "bad deal" for the state. Cassell misinterprets the trial court's decision. The trial court did not

deny his motion to withdraw his Ohio RICO plea because he had also pleaded guilty to drug possession and forfeiture. Rather, the trial court's rationale for rejecting the motion to withdraw the RICO plea was that Cassell had failed to establish the requisite manifest injustice necessary to grant the motion. And in the absence of a basis for allowing the withdrawal of that plea, the entire plea agreement remained enforceable.

{¶38}  We overrule Cassell's fourth assignment of error.

## IV. CONCLUSION

{¶39}  Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:  Concurs in Judgment and Opinion.
McFarland, J.:  Concurs in Judgment Only.


For the Court


BY:  _____
          William H. Harsha, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**